In the Matter of BOSTON AND MAINE CORPORATION, Debtor (4 cases).

Appeal of MAINE CENTRAL RAILROAD COMPANY.

Appeal of CHESAPEAKE AND OHIO RAILWAY COMPANY et al.

Appeal of TRAILER TRAIN COMPANY.

Appeal of The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al.

Nos. 78–1516 to 78–1519.

United States, Court of Appeals, First Circuit.

Argued April 5, 1979.

Decided June 15, 1979.

Paul B. Galvani, Boston, Mass., with whom H. Reed Witherby, Boston, Mass., and Ropes & Gray, Boston, Mass., were on brief, for appellant in 78–1516.

John T. Collins, Boston, Mass., with whom Sherburne, Powers & Needham, Boston, Mass., was on brief, for appellants in 78–1517.

William P. Quinn, Philadelphia, Pa., with whom Fell, Spalding, Goff & Rubin, Philadelphia, Pa., was on brief, for appellant in 78–1518.

W. Charles Hogg, Jr., Philadelphia, Pa., with whom William R. Glendon, Moline, Ill., Donald F. Luke, New York City, Edward C. Toole, Jr., Stephen W. Miller, Philadelphia, Pa., Rogers & Wells, New York City, and Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., were on brief, for appellants in 78–1519.

Robert M. Gargill, Boston, Mass., with whom Charles W. Mulcahy, Jr., Zdislaw W. Wieckowski, and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellees, Trustees of the Boston and Maine Corporation.

Joseph H. B. Edwards, Boston, Mass., with whom Paul J. Lambert, and Bingham, Dana & Gould, Boston, Mass., were on brief, for appellees, The First National Bank of Boston, et al., etc.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal in a railroad reorganization case from a district court's refusal to order immediate payment of pre-reorganization freight car per diem charges to appellant railroads prior to payment of all other unsecured pre-reorganization claims. We affirm.

The facts of this case are ably set forth in the district court's opinion, *Matter of Boston & Maine Corp.*, 456 F.Supp. 412 (D.Mass.1978). We provide here only a brief outline of the controversy.

Since before the turn of the century, railroad companies have made a practice of "interlining" freight cars, i. e., loaning cars to one another rather than loading and unloading freight every time a shipment passes onto rails belonging to a different road. Passage of the Interstate Commerce Act made this practice mandatory. Since 1930, the rules of the Association of American Railroads (AAR) for determining net rental balances for freight car rentals (per diem charges) have had the sanction of the Interstate Commerce Commission. *Rules for Car Hire Settlements,* 160 I.C.C. 369, 165 I.C.C. 495 (1930). The various roads are required to keep records of foreign car use on their lines and present a monthly tally of such use by the tenth day of the second month following the month being accounted for (the forty day rule).

While the mechanics of settlement have long been established, the proper level of per diem payments has been a continuing subject of dispute. In 1953, the debtor Boston and Maine Railroad objected to an increase in the AAR-established rate, backed out of the rate setting agreement, and paid only the pre-1953 rate in its monthly settlements.

The breakdown of the AAR agreement setting interline per diem charges resulted in a court suit and an ICC proceeding. *See Baltimore & Ohio R.R. Co. v. N.Y., N.H. & Hartford R.R. Co.,* 196 F.Supp. 724 (S.D.N.Y.1961); *Chicago, B. & Q. R.R. Co.,* 332 I.C.C. 176 (1968). The ICC proceeding resulted in a declaration of reasonable per diem rates for the period from 1953 through August 1, 1969, and an order that interlining railroads pay specific per diem charges from August 1, 1969 onward. Court challenges to the rate-prescribing order ended in January of 1970. *See Boston and Maine R.R. v. United States,* 297 F.Supp. 615 (D.Mass.), *aff'd,* 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1969), *reh'g denied,* 396 U.S. 1030, 90 S.Ct. 548, 24 L.Ed.2d 527 (1970). The ICC ultimately set the effective date of the rate-prescribing order at June 1, 1970, retroactive for resettlement purposes to August 1, 1969. The petition for reorganization in this case was filed March 12, 1970.

Appellant railroads now seek an order from the reorganization court compelling the trustee to pay immediately the difference between what Boston & Maine actually remitted for per diem charges and what should have been paid under the rates computed by the ICC. Approximately 4 million dollars are involved. Appellants reason that because the trustee's operation of the Boston and Maine is subject to the jurisdiction of the ICC, 11 U.S.C. § 205(c)(2),[1] and because the ICC has ordered payment of specific per diem rates at specific settlement times, neither the trustee nor the reorganization court has discretion to defer payment of pre-reorganization per diem charges, even though they look like garden variety unsecured claims against the estate. The district court rejected this argument on the grounds that there is no statutory basis for distinguishing pre-reorganization per diem claims from any other pre-reorganization claims and that, even if ICC jurisdiction might affect the court's control over the priority of pre-reorganization creditors, such jurisdiction has not been exercised. We agree.

As the court below noted, the claims involved here belong in three logically distinct groups. First, there are the claims for per diem charges for car use between 1953 and August 1, 1969, the latter being the effective date of the ICC's prospective order fixing future rates. Second, there are the claims for charges accrued after August 1, 1969 and presented in settlement accounts prior to the commencement of reorganization, March 12, 1970. Finally, there are the charges for February and March of 1970, which came due on April 10 and May 10, respectively, after reorganization began.

Like the district court, we have little problem in dealing with the first group, which makes up the bulk of the charges involved. Even assuming *arguendo* that a general ICC order relating to payment of

1. *See* note 4, *infra.*

interline accounts controls a reorganization court's scheduling of payment of pre-reorganization claims, the first group of claims involved here simply is not the subject of any ICC order. Contrary to appellants' assertion, initial ICC adoption of the private AAR rules for per diem settlement in 1930 did no more than adopt the timing and mechanism for payment of per diem rates. It did not fix rates. *See Rules for Car Hire Settlements, supra.* Nor did subsequent proceedings invoke the full power of ICC jurisdiction to order payment at a specific level. *Chicago, B. & Q. R.R. Co.,* 297 I.C.C. 291 (1955). In 1955, the Commission stated that it had "never undertaken to establish a general basis of per diem charges under [its] authority in section 1(14)(a) of the Act . . . ." *Id.* at 295.

When the Commission did act with reference to the 1953–1969 period, it was solely to advise the district court for the Southern District of New York in establishing the proper level of *quantum meruit* damages against those railroads that had backed out of the AAR agreement in 1953. *Chicago, B. & Q. R.R. Co.,* 332 I.C.C. 176, 183 (1968). Indeed, the portion of the case before the ICC dealing with past rates was dismissed without an order, only an advisory opinion being needed.[2] Finally, we note that the character of the ICC's 1968 ruling on past rates was recently considered by the Second

Circuit in *Seaboard Coast Line R.R. Co. v. Long Island R.R. Co.,* 595 F.2d 96 (1979). The court concluded that suits seeking recovery of the pre-1969 rates announced in the 1968 ICC decision are governed by the statute of limitations for contract and not the statute for collection of public carrier tariffs. The Second Circuit held, as we do, that the 1968 ICC decision, as it applied to the 1953–1969 period, was not an exercise of the power to set rates under section 1(14)(a) of the Interstate Commerce Act.[3]

We come now to the core issue in this appeal: appellants' assertion that the Commission's general exercise of jurisdiction to fix by order rates and terms of settlement after August 1, 1969, eliminates the reorganization court's discretion as to the timing of payment of pre-reorganization debts. We examine first the statutory basis of that claim.

Section 77(c)(2) of the Bankruptcy Act, 11 U.S.C. § 205(c)(2)[4] gives the reorganization trustee all the powers of a trustee in bankruptcy, including the power to operate the business of the debtor railroad, "subject to the control of the judge and the jurisdiction of the Commission." Section 1(14)(a) of the Interstate Commerce Act, 49 U.S.C. § 1(14)(a),[5] gives the Commission power to set the rates for car hire. Section 1(17)(a) of the Act[6] subjects all railroad operators,

---

**2.** We note in passing that counsel for the ICC appeared before the district court and argued that pre-1969 rates were never subject to an ICC order, even after the 1968 decision declaring reasonable rates for 1953–1969.

**3.** *See* note 5, *infra.*

**4.** "The trustee or trustees so appointed, upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed, pursuant to section 44 of this Act or any other section of this Act, and, to the extent not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding, and, subject to the control of the judge and the jurisdiction of the Commission as provided by the Interstate Commerce Act as now or hereafter amended, the power to operate the business of the debtor." 11 U.S.C. § 205(c)(2).

**5.** "(14) Establishment by Commission of rules, etc., as to car service. (a) The Commission may, after hearing, on a complaint or upon its own initiative without complaint, establish reasonable rules, regulations, and practices with respect to car service by common carriers by railroad subject to this part, including the compensation to be paid and other terms of any contract, agreement, or arrangement for the use of any locomotive, car, or other vehicle not owned by the carrier using it (and whether or not owned by another carrier), and the penalties or other sanctions for nonobservance of such rules, regulations, or practices." 49 U.S.C. § 1(14)(a).

**6.** "(17) Directions of Commission as to car service; disobedience; rights of States; bribery. (a) The directions of the Commission as to car service and to the matters referred to in paragraphs (15) and (16) of this section may be made through and by such agents or agencies as the Commission shall designate and appoint

including operating trustees, to fines for violation of a Commission order relating to car service. Thus, appellants reason, the jurisdiction of the commission extends to ordering a trustee to pay per diem charges *immediately*, including pre-reorganization charges; and such jurisdiction has been exercised and controls the trustee in this case.

Appellees rely upon sections 77(c)(7) and 77(*l*) of the Bankruptcy Act, 11 U.S.C. §§ 205(c)(7) & (*l*),[7] which together set forth the fundamental rule of railroad reorganization: the reorganization court establishes the rights and priorities of creditors presenting claims against the estate and determines when those claims shall be paid. It is conceded that the pre-reorganization charges involved here are "claims" within the meaning of section 77(b) of the Act.[8] Such claims would, absent some special treatment, be paid according to the priorities established by the reorganization court. Finally, the pre-reorganization per diem claims do not qualify for any of the express special priorities created by the Act. *See, e. g.*, 11 U.S.C. §§ 205(j), 205(n).

There is no specific provision in either the Bankruptcy Act or the Interstate Commerce Act giving the ICC the power to override the reorganization court's discretion in setting the time for payment of

claims against the estate. Thus, appellants can prevail only if the general power of the ICC to supervise the trustee's operation of the railroad outweighs the fundamental power of the reorganization court to set priorities for payment of pre-reorganization claims and to schedule payment of such claims consistent with the need to conserve assets for rehabilitation of the debtor.

Two courts have decided this issue. In *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir. 1973) (en banc), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) (hereinafter *Penn Central I*), the Third Circuit decided that: "the Interlines at this juncture are in exactly the same position as other suppliers of Penn Central who were unpaid for goods and services delivered prior to the filing of the reorganization petition." *Id.* at 528. The parties in *Penn Central I*, however, did not raise the issue of the effect, if any, of ICC orders relating to payment of per diem charges.

The Seventh Circuit in *Matter of Chicago, R.I. & P.I. R.R. Co.*, 537 F.2d 906 (7th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977) (hereinafter *Rock Island*), seized upon the limited argument presented in *Penn Central I* to distinguish the Third Circuit case and hold

for that purpose. It shall be the duty of all carriers by railroad subject to this part, and of their officers, agents, and employees, to obey strictly and conform promptly to such orders or directions of the Commission, and in case of failure or refusal on the part of any carrier, receiver, *or operating trustee* to comply with any such order or direction such carrier, receiver, or trustee shall be liable to a penalty of not less than $100 nor more than $500 for each such offense and $50 for each and every day of the continuance of such offense, which shall accrue to the United States and may be recovered in a civil action brought by the United States." 49 U.S.C. § 1(17)(a). (Emphasis added.)

7. "(7) Time for filing and proof of claims. The judge shall promptly determine and fix a reasonable time within which the claims of creditors may be filed or evidenced and after which no claim not so filed or evidenced may participate except on order for cause shown, the manner in which such claims may be filed or evidenced and allowed, and for the purposes of the plan and its acceptance, after notice and

hearing, the division of creditors and stockholders into classes according to the nature of their respective claims and interests. *Such division shall not provide for separate classification unless there be substantial differences in priorities, claims, or interests.*" 11 U.S.C. § 205(c)(7) (emphasis added).

"(*l*) Operative as voluntary petition for adjudication. In proceedings under this section and consistent with the provisions thereof, *the jurisdiction and powers of the court*, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, *shall be the same as if a voluntary petition for adjudication had been filed* and a decree of adjudication had been entered on the day when the debtor's petition was filed." 11 U.S.C. § 205(*l*) (emphasis added).

8. "The term 'claims' includes debts, whether liquidated or unliquidated securities (other than stock and option warrants to subscribe to stock), liens, or other interest of whatever character." 11 U.S.C. § 205(b).

that a trustee is bound by the 1968 ICC order to pay both pre- and post-reorganization per diem claims immediately. The panel felt that section 77 embodies conflicting policies: the desire for rehabilitation of the railroad to benefit creditors and the need for ICC supervision to insure that rehabilitation does not take place at the expense of other railroads and the shipping public in general. The *Rock Island* court found no guidance in the statute; no "language in the statute itself clearly indicates which policy and which authority is to predominate . . . ." *Id.* at 910. The Commission's arguments concerning the national freight car shortage and the strain that bankrupt railroads put on solvent lines persuaded the panel that the ICC, and not the reorganization court should decide whether or not immediate payment of old per diem charges would benefit the public more than buttressing a bankrupt railroad.[9]

In *Matter of Penn Central Transportation Co.*, 553 F.2d 12 (3d Cir. 1977) (hereinafter *Penn Central II*), the Third Circuit was asked to reconsider its holding in *Penn Central I* in light of the *Rock Island* decision. The panel refused to reopen a decided issue simply to hear an argument omitted by counsel at the prior hearing. The court went on to reaffirm its strong belief in the correctness of *Penn Central I*. While we cannot read *Penn Central II* as directly in point on the issue in this case,[10] we think the Third Circuit's rationale for denying immediate payment of pre-reorganization per diem claims is applicable here. After pointing out that, like section 77 of the Bankruptcy Act, the Regional Rail Reorganization Act does not resolve the conflicting jurisdiction of the ICC and the reorganization court over per diem claims, the panel in *Penn Central II* gave the following reasons for leaving the ultimate decision with the court:

"A reorganization court, as a court of bankruptcy, must necessarily be equipped to deal with countless financial and operating exigencies on virtually a daily basis, few of which could have been foreseen when the Interstate Commerce Act (and I.C.C. regulations) were enacted. To cope with these problems for the benefit of all parties, and in the public interest, requires that the reorganization court be free to exercise its discretion and to be immediately responsive to conflicting and varied demands which arise. To hold that the Interstate Commerce Act mandates major repayments of funds to selected creditors, without regard to all other needs of the estate and public, would necessarily run counter to the theory underlying the administration of insolvent estates and, in particular, railroads in reorganization. While we recognize the authority that the I.C.C. exercises over the general operations of the nation's railroads, when matters peculiar to reorganization are involved which require the discretion and flexibility available in a reor-

---

**9.** The problems created for the national transportation policy when a bankrupt railroad is substantially in arrears on pre-reorganization per diem payments are severe. Railroads must share freight cars. Until recently, reimbursement for such sharing only covered actual expenditures for purchase and maintenance. *Investigation of Adequacy of Railroad Freight Car Ownership, Car Utilization, Distribution, Rules and Practices*, 335 I.C.C. 264 (1969). Given this substantial disincentive to investment, a shortage developed and continues. If bankrupt railroads can avoid payment of pre-reorganization per diem charges, solvent railroads are forced to subsidize their operations, at least temporarily, increasing the disincentive to car ownership. A car shortage hurts the shipping public. On the other hand, a substantial drain on the assets of a railroad in reorganization will result from immediate payment of the old charges and may injure the ability of the bankrupt railroad to continue to provide service to the public.

**10.** The assets of the debtor in *Penn Central II* had been conveyed to the Consolidated Rail Corporation. Under 45 U.S.C. § 791(b)(4), the jurisdiction of the ICC ceases upon the date of such a conveyance. Thus, no argument could be made that continued ICC jurisdiction over the reorganization trustee mandated immediate payment of pre-reorganization per diem charges. Rather, the charges were immediately due only if the ICC order in existence at the time the charges accrued somehow survived to limit the jurisdiction of the reorganization court after the ICC's jurisdiction had terminated. The Third Circuit thought not.

ganization court, primacy must be accorded to that court's determinations. *See New Haven Inclusion Cases*, 399 U.S. 392, 431, 90 S.Ct. 2054, 26 L.Ed.2d 691 et seq. (1970)." *Penn Central II, supra*, at 16.

We add to the Third Circuit's persuasive arguments our observation that, while the reorganization court in this case has carefully weighed the ability of the debtor to sustain an immediate multi-million dollar charge, the ICC has only issued a general order applicable to all railroads. As counsel for the Commission conceded at oral argument before the district court,[11] no specific order directed to *this reorganization trustee* has been violated and thus the remedial provisions of section 1(17)(a) cannot be invoked.[12]

We also perceive a perhaps more fundamental reason to reject the *Rock Island* rule. *Rock Island* involved per diem charges for January, February, and March of 1975. The debtor had petitioned for reorganization on March 17, 1975. Under the forty day rule, the charges in issue had come due on March 10, April 10, and May 10. The January charges were an old and overdue debt before the trustee received the debtor's property. Nevertheless, the Seventh Circuit panel found the trustee in *"current"* violation of ICC orders. *Rock Island, supra*, at 911 (emphasis in original). We think this statement reflects a misconception about bankruptcy reorganization.

Upon the filing of a petition in bankruptcy, the assets of the debtor rest in new and different hands. In railroad reorganization, a trustee takes those assets and, in order to facilitate rehabilitation, the claims of pre-filing creditors take a back seat while post-filing creditors obtain priority as expenses of administration. Claims are "post-filing"

if the consideration supporting them was received by the trustee, not the debtor. *See In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir. 1976) (Chapter XI debtor in possession). As to settlements due before filing, the trustee could not have violated Commission orders because the trustee did not exist. Moreover, as to car use provided before filing but accounted for after filing, claims for per diem are claims against the debtor, not claims against the trustee (expenses of administration). *See Denton & Anderson Co. v. Induction Heating Corp.*, 178 F.2d 841 (2d Cir. 1949). To say that the trustee violated Commission rules on per diem payments for pre-reorganization use is to say that the trustee and the debtor are the same entity. Such is simply not the case. *In re Mammoth Mart, Inc., supra.*[13]

We think this view completely consistent with the jurisdiction of the ICC under section 77(c)(2). For so long as the trustee operates a railroad, he must comply with ICC orders relating to *his* operation. Appellants present no authority to the contrary. For instance, in *In re Lehigh Valley R.R. Co.*, 508 F.2d 332 (3d Cir. 1975), a pre-reorganization Commission order bound the trustee's operation of the railroad because the order related to the duty to fulfill periodic obligations, arising after filing, under the terms of ICC approval of a pre-reorganization merger. These periodic obligations involved post-reorganization expenses necessary to continue providing service on a merged line. We think that forcing a trustee to continue rail service on a merged line is different from forcing a trustee to immediately pay for services rendered before reorganization began.

Finally assuming *arguendo* that the Congressional directions in section 77(c)(2) and

---

11. The Commission participated below but did not seek to appear before this court.

12. *See* note 6, *supra.*

13. This application of fundamental bankruptcy principles demonstrates that the last two of the three "groups" of claims, *viz.*, post-1969 per diem claims settled before and after filing, should receive the same treatment. These principles also dispose of an ingenious argu-

ment made by appellant Maine Central Railroad. MCR argues that because the 1968 ICC order did not become effective until June of 1970, after the date of filing, all of the Commission-ordered per diem payments are post-filing obligations. We reject this argument on the ground set out above: all of the per diem charges in issue are supported by pre-filing consideration.

77(*l*) were in perfect and contradictory equipoise, we would find clear guidance in subsequent Congressional resolution of the policy conflict involved. In railroad reorganizations filed after October 1, 1979, payments for both pre- and post-reorganization per diem charges must be approved by the reorganization court. Bankruptcy Reform Act of 1978, P.L. No. 95–598 § 1166, 11 U.S.C. § 1166. The legislative history of this provision indicates that Congress expressly rejected a draft that would have codified the *Rock Island* rule. Congress chose instead to place the timing of payment of per diem claims exclusively in the discretion of the reorganization court.[14] Thus, the resolution of conflicting policies we find implicit in the old Act is explicit in the new.

There remain for resolution the claims of appellant Trailer Train. Owned by a consortium of railroads, Trailer Train is merely a car line, an owner and lessor of freight cars, not a railroad. No ICC order was in effect affecting rentals from car lines during the period in question. Trailer Train therefore rests its appeal solely upon the need to promote car ownership—the policy underlying ICC orders requiring prompt payment of per diem charges to railroads. Since we find that not even a direct ICC order relating to pre-reorganization charges overrides the reorganization court's discretion, Trailer Train's ride on the policy coattails of such an order is a short one indeed.

*Affirmed.*

---

14. The Senate version would have codified the *Rock Island* view. S. 2266 § 1169, 95th Cong., 1st Sess.; *see* S. Rep. No. 989, 95th Cong., 1st Sess. 134 (1978). The House amendment ultimately enacted rejected *Rock Island* as violative of the principle of equal treatment of creditors. *See* [1978] U.S. Code Cong. & Admin. News, pp. 5787, 6479.