**In re MICHIGAN–WISCONSIN TRANS-PORTATION COMPANY, Michigan Terminal Company, and Michconsin, Inc., Debtors.**

**Bankruptcy Nos. ST91–83338, ST91–84604 and ST91–84603.**

United States Bankruptcy Court, W.D. Michigan, N.D.

Dec. 9, 1993.

---

Jenner & Block (Timothy J. Chorvat, briefed), Chicago, IL, for Donald R. Cassling, trustee.

Guerrieri, Edmond & James (Martha L. Walfoort, briefed), Washington, DC, for the Transp.●Communications Intern. Union, C & O System Bd.

## OPINION AND ORDER REGARDING TRUSTEE'S OBJECTION TO CLAIM OF THE TRANSPORTATION·COMMUNICATIONS INTERNATIONAL UNION, C & O SYSTEM BOARD

JO ANN C. STEVENSON, Bankruptcy Judge.

### I. Introduction.

This case raises questions of first impression regarding the interpretation of 11 U.S.C. § 1167. At issue is Donald R. Cassling, Trustee's ("Trustee") objection to claim no. 105 filed by the Transportation●Communications International Union, C & O System Board ("TCU"). The dispute is not so much whether the claim itself is valid, but what, if any, priority the claim is entitled to under 11 U.S.C. § 507. Counsel for both litigants are commended for the fine quality of their briefs which were of great assistance in deciding this contested matter.

### II. The claim and the basis for objection.

The claims bar date in this case was January 20, 1992. Claim no. 105, filed on January 21, 1992,[1] asserts that TCU is the exclusive bargaining representative for the Debtors' current and former clerical and related employees. In that capacity it claims that it is entitled to payment on behalf of several of its members as follows:

  1. Pre-petition wages owed to Nico Brouwer in the amount of $9,847.52 pursuant to a settlement of a claim filed by the union on Mr. Brouwer's behalf.

  2. An outstanding claim at the time of filing on behalf of Kathy Howell Gallagher

---

1. Although it appears from the court's claims register that this claim was filed one day late, the Trustee has not objected to the timeliness of the claim. Accordingly, we conclude that any objections to timeliness have been waived.

for one day of sick pay in the amount of $71.20.

3. An outstanding claim at the time of filing on behalf of Clayton Spencer, Kathy Howell Gallagher and Margot Keough for Debtors' alleged violation of wage provisions of the collective bargaining agreement in the total amount of $2,365.44.

4. An outstanding claim at the time of filing on behalf of Clayton Spencer and Kathy Howell Gallagher for Debtors' alleged violation of the applicable protective agreement in the total amount of $67,719.66.

5. An outstanding claim at the time of filing on behalf of Clayton Spencer, Kathy Howell Gallagher, Judith Thiel and Jean McCumber for Debtors' alleged violations of the sick leave provisions of the applicable labor agreement in the total amount of $6,412.60.

6. An outstanding claim at the time of filing on behalf of Clayton Spencer, Kathy Howell Gallagher, Judith Thiel and Jean McCumber for Debtors' alleged violation of the vacation provisions of the applicable labor agreement in the total amount of $3,206.48.

The claim requests that these pre-petition claims be accorded priority under 11 U.S.C. § 507(a)(3) and (4).

On August 12, 1993 the Trustee objected to TCU's claim. The objection raises the following issues:

1. Section 507(a)(3) limits claims to $2,000 per individual earned within the 90 days preceding bankruptcy. As the claim failed to break out the amounts per individual or identify the time frame within which the amounts were earned, priority under § 507(a)(3) has not been established.

2. Two of the claimants, Judith Thiel and Jean McCumber, had filed their own claims (nos. 66, 94, and 135)[2] which drew

no objection and of which claim no. 105 was duplicative.[3]

3. The Trustee could not reconcile the amounts set forth in claim no. 105 with the Debtors' records.

The Trustee therefore requested that claim no. 105 be disallowed in its entirety.

TCU filed a response on September 10, 1993. In its response it alleged that the collective bargaining agreement had never been rejected by the Debtors under 11 U.S.C. § 1113(a). It further stated that 11 U.S.C. § 1167 prohibits the Trustee or the court from changing the terms of the collective bargaining agreement without complying with the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.* Based upon interpretative case law regarding § 1113, TCU then asserted that its entire claim was entitled to first priority status under § 507(a)(1) as administrative expenses allowable under 11 U.S.C. § 503(b)(1)(A).

A flurry of briefs followed in which the parties debated the applicability of § 1113 and its relationship to § 1167. Both parties have agreed that no hearing is necessary and that the court may decide this matter on the pleadings.

### III. Jurisdiction.

Jurisdiction exists in this matter under 28 U.S.C. § 1334(b). Because this is a claim allowance matter, it is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### IV. Priority issues raised generally.

TCU has asserted that its claim is entitled to priority as an administrative expense under 11 U.S.C. § 507(a)(1). In addition, TCU's claim originally asserted priority under §§ 507(a)(3) and (4). Section 507(a) provides a rank ordering of priorities and states in applicable part as follows:

**2.** The breakdown of these claims is as follows:

| Claim no. | Amount | Claimant | Date filed |
|---|---|---|---|
| 66 | $ 4,442.17 | Jean R. McCumber | 1/15/92 |
| 94 | 11,628.88 | Judith Ann Thiel (wages) | 1/16/92 |
| 135 | 11,628.78 | Judith Ann Thiel (severance, interest) | 10/27/92 |

**3.** Nico Brouwer also filed a claim, no. 138, on November 17, 1992 for wages of $9,847.52, the same amount asserted on his behalf by TCU. The Trustee did not assert that a duplicate claim was on file for this employee. However, we note that the claim was filed well after the claims bar date.

The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

.        .        .        .        .

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

    (A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

    (B) to the extent of $2,000 for each individual.

(4) Fourth, allowed secured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, which ever occurs first; but only

    (B) for each such plan, to the extent of—

    (i) the number of employees covered by each such plan multiplied by $2,000; less

    (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

Although TCU's claim asserts priority under § 507(a)(4), it does not appear that any of the claims it has asserted fall into that category.

The Trustee does not appear to dispute the applicability of § 507(a)(3) in this case, but alleges that TCU has failed to state sufficient facts in its claim to determine the extent to which this priority applies to the various claims raised. We agree that the proof of claim as filed does not set forth sufficient information to determine what portion of the claim is entitled to § 507(a)(3) priority. To the extent that the claim asserts priority under § 507(a)(3), we hold that insufficient facts are stated on the face of the claim to determine the amount entitled to priority and accordingly we disallow the claim as it relates to priority under that subsection.

## V. Priority under 11 U.S.C. § 507(a)(1).

The central issue in this contested matter is whether the claims asserted by TCU are entitled to priority under 11 U.S.C. § 507(a)(1). TCU's argument that the claims are entitled to priority is fairly sophisticated. To simplify matters we track that argument in our analysis.

Under 11 U.S.C. § 1167, the Trustee may not change the wages or working conditions of TCU's members except in accordance with the RLA. Section 1167 states in its entirety that:

> Notwithstanding section 365 of this title, neither the court nor the trustee may change the wages or working conditions of employees of the debtor established by a collective bargaining agreement that is subject to the Railway Labor Act (45 U.S.C. 151 et seq.) except in accordance with section 6 of such Act (45 U.S.C. 156).

The parties agree that the collective bargaining agreement at issue in this case is of the kind identified in § 1167. Based upon the legislative history, TCU argues, this section was intended to afford to railway collective bargaining agreements as great or greater protection as afforded to collective bargaining agreements generally under 11 U.S.C. § 1113. That section states in pertinent part as follows:

> (a) The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

> .        .        .        .        .

> (f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with this section.

Relying upon *United Steel Workers of America v. Unimet Corp. (In re Unimet Corp.)*, 842 F.2d 879 (6th Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57

(1988) and the legislatively reversed *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1983), TCU next argues that § 1113 requires a trustee to make all payments under the collective bargaining agreement until it is rejected, notwithstanding the limitations imposed upon the payment of administrative expenses in 11 U.S.C. § 503(b). Section 503(b) states in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

As claims under an unrejected collective bargaining agreement governed by § 1113 are entitled to administrative expense status and thus first priority under § 507(a)(1), TCU concludes, the same should be true for claims arising out of collective bargaining agreements governed by § 1167 which it considers as a more strict provision.

■ While TCU presents a persuasive argument, we find this last step in the argument unconvincing. Initially, we must be guided by the statutory language. As *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) instructs:

> The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). In such cases, the intention of the drafters, rather than the strict language, controls. *Ibid.*

Under *Ron Pair* the first step in our analysis is to determine whether there is ambiguity in the statutory language. If there is none, the intent of the drafters controls only if it is "demonstrably at odds" with the statute itself.

■ To understand the relationship between § 1113 and § 1167, a distinction must be made between assumption and rejection of an executory contract, the priority of claims, and administrative expenses. Assumption or rejection has to do with the debtor's ongoing obligation to perform a contract post-petition, and, as *Bildisco* observed, is generally governed by § 365. If an executory contract is rejected, § 365(g) grants the non-debtor party to the contract a claim for damages based upon the debtor's statutorily decreed pre-petition breach of contract.

■ Priority and administrative expense status are entirely separate matters. Priority addresses the order in which claims against the estate, both pre- and post-petition, are paid. Claims are generally entitled to first priority of payment under § 507(a)(1) only to the extent that they qualify as administrative expenses under § 503(b). Administrative expenses are normally post-petition costs which are necessary to sustain the debtor's business. *See Employee Transfer Corp. v. Grisby (In re White Motor Corp.),* 831 F.2d 106 (6th Cir.1987).

Both § 1113 and § 1167 are addressed primarily to the issue of assumption or rejection of executory contracts, and both are exceptions to the general rule set forth in § 365 which apply in the context of collective bargaining agreements. It is this similarity which causes TCU to equate these two sections. However, the issue at this juncture is not the assumption or rejection of the collective bargaining agreement, but the priority of a claim. TCU relies upon *Unimet, supra* to make the argument that § 1113 requires that the Trustee make all payments on an ongoing basis under the collective bargaining agreement regardless of the provisions of § 503 and § 507. In *Unimet* the debtor ceased operations at the facility subject to the collective bargaining agreement at issue prior to filing bankruptcy. The only obligation it had with respect to that agreement post-petition was the payment of retirement benefits. There was no dispute that these payments were not administrative expenses as defined in § 503(b). The Sixth Circuit ruled that notwithstanding § 503(b) the debtor had an obligation to make these payments

on an ongoing basis. Unlike this case, *Unimet* focused not upon pre-petition claims under the collective bargaining agreement, but upon the post-petition obligation to pay for current retirement benefits.

A close reading of the *Unimet* opinion also reveals that this holding turned upon the specific language of § 1113(f) which mandates that § 1113 be complied with notwithstanding any other provisions of the Bankruptcy Code. In contrast, § 1167 contains override language only with respect to § 365 of the Bankruptcy Code. Furthermore, § 1113(f) forbids the Trustee from terminating or altering "any provisions of a collective bargaining agreement." Section 1167, on the other hand, limits its scope to changes in the "wages or working conditions of employees" under the collective bargaining agreement. The language of § 1113(f) thus explicitly incorporates protections for the bargaining agreement itself, while § 1167 protects only the wages and working conditions which are attendant to the collective bargaining agreement.

There may be apt comparisons between § 1113 and § 1167 in the area of assumption or rejection of collective bargaining agreements. But because § 1167 fails to address the issues of priority or administrative expense status, the analogy breaks down on these questions. Certainly, the fact that § 1113 deals with those issues, albeit indirectly, does not give rise to an ambiguity in § 1167, or more appropriately, in the general provisions of § 503 and § 507. In the absence of a specific directive to the contrary the plain language of § 503 and § 507 must apply.

In order to bridge this statutory gulf between § 1113 and § 1167 TCU looks to the statutory history of these provisions. Section 1167, TCU correctly observes, is essentially a reenactment of a provision found in the former Bankruptcy Act. The purpose of the provision as it originally stood was to preserve the status quo in this area of labor relations. All of this is supported by the legislative history of § 1167:

> Section 1167 is derived from present section 77(n).... The subject of railway labor is too delicate and has too long a

history for this code to upset established relationships. The balance has been struck over the years. This provision continues ·that balance unchanged.

H.R. REP. No. 595, 95th Cong., 1st Sess. 423 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6379. While § 1167 was part of the Bankruptcy Code as originally enacted, § 1113 was not. Rather, § 1113 was enacted in response to a series of cases which culminated in the Supreme Court's *Bildisco* decision. In that opinion the Court ruled that collective bargaining agreements were executory contracts which were subject to rejection under § 365. Significantly, the court premised its holding in part on the existence of § 1167:

> The text of § 365(a) indicates that Congress was concerned about the scope of the debtor-in-possession's power regarding certain types of executory contracts, and purposely drafted § 365(a) to limit the debtor-in-possession's power of rejection or assumption in those circumstances. Yet none of the express limitations on the debtor-in-possession's general power under § 365(a) apply to collective-bargaining agreements. Section 1167, in turn, expressly exempts collective-bargaining agreements subject to the Railway Labor Act, but grants no similar exemption to agreements subject to the NLRA [National Labor Relations Act]. Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all collective-bargaining agreements covered by the NLRA.

*Bildisco,* 465 U.S. at 522, 104 S.Ct. at 1194 (footnotes omitted). In a separate footnote, the Court quoted § 1167 and recited much of the legislative history set forth above.

Congress' response to *Bildisco* was to legislatively overrule the case by enacting § 1113. It appears to be TCU's argument that the disparity in the language of these two statutory provisions can be explained away by the context in which each was enacted and that the provisions are the same in spirit if not in letter.

While this argument is creative, it suffers from two flaws. First, none of the statutory history makes any reference one way or another to the priority of pre-petition claims under collective bargaining agreements which fall within § 1167. This being the case, the legislature's intent cannot be said to be "demonstrably at odds" with the statutory language which *Ron Pair* requires before the plain language of the statute can be ignored. Secondly, a closer reading of the statutory history reveals that the history supports the position taken by the Trustee.

We start where TCU finished, with the House Report's statement that the practice in § 77(n) of the Bankruptcy Act, 11 U.S.C. § 205(n) (repealed), of leaving undisturbed rail labor relationships was continued unchanged in § 1167. TCU assumes that this deference may be equated to an abrogation of the priority provisions of the Code in the same manner as specifically authorized in § 1113(f). This assumption is not supported by the pre-Code statute. Section 77(n) covered a broader range of topics than does § 1167:

> In proceedings under this section and in equity receiverships of railroad corporations now or hereafter pending in any court of the United States, claims for personal injuries to employees of a railroad corporation, claims of personal representatives of deceased employees of a railroad corporation, arising under State or Federal laws, and claims now or hereafter payable by sureties upon supersedeas, appeal, attachment, or garnishment bonds executed by sureties without security for and in any action brought against such railroad corporation or trustee appointed pursuant to this section, shall be preferred against and paid out of the assets of such railroad corporation as operating expenses of such railroad. No judge or trustee acting under this Act shall change the wages or working conditions or railroad employees except in the manner prescribed in the Railway Labor Act, as amended June 21, 1934, or as it may be hereafter amended. . . .

The second sentence quoted above is familiar as the source of § 1167.

The first sentence, though not cited by either party, is particularly relevant because it discusses issues of priority. This sentence was reenacted elsewhere in the Code and now appears as § 1171:

> (a) There shall be paid as an administrative expense any claim of an individual or of the personal representative of a deceased individual against the debtor or the estate, for personal injury to or death of such individual arising out of the operation of the debtor or the estate, whether such claim arose before or after the commencement of the case.
>
> (b) Any unsecured claim against the debtor that would have been entitled to priority if a receiver in equity of the property of the debtor had been appointed by a Federal court on the date of the order for relief under this title shall be entitled to the same priority in the case under this chapter.

The legislative history of this section indicates that this is an expansion of the priorities afforded under former § 77(n):

> This section is derived from current law. . . . The priority under current law [for personal injury claims], found in section 77(n) applies only to employees of the debtor. This subsection expands the protection provided.
>
> Subsection (b) follows present section 77(b) of the Bankruptcy Act. . . .

H.R. Rep. No. 595, 95th Cong., 1st Sess. 424 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6380.[4]

■ It is significant that Congress saw fit to reenact and even expand the provisions of § 77(n) which permitted certain pre-petition creditors to be paid as administrative expense claimants but did not extend that status to employees with claims for pre-petition breaches of collective bargaining agreements. The identification of these separate classes of creditors for administrative expense treatment implies the exclusion of all other classes. This outcome is dictated by the

---

4. It is apparent that § 1171(a) has no application in this case, as none of the claims advanced arise

out of personal injuries. TCU has not claimed that it is entitled to priority under § 1171(b).

maxim of statutory construction often stated as *expressio unius est exclusio alterius:* "the expression of one thing is to the exclusion of the other." *See Tennessee Valley Authority v. Hill,* 437 U.S. 153, 188, 98 S.Ct. 2279, 2298, 57 L.Ed.2d 117 (1978), *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

Where Congress has not expressed an intent to change pre-Code practice, cases decided under prior law may be informative. *See Ron Pair,* 489 U.S. at 244–245, 94 S.Ct. at 1032–33. The case law under § 77(n) provides an example of the application of the *expressio unius* maxim. In *In re Boston & Maine Corp.,* 600 F.2d 307 (5th Cir.1979), a number of railroads claimed that pre-petition per diem charges owed by the debtor for use of their rail cars on the debtor's tracks were entitled to priority based upon various provisions of the Interstate Commerce Act. The court concluded that the Bankruptcy Act governed the establishment of priorities in the case before it. In determining that these claims were general unsecured claims not entitled to priority, the court observed that there was no provision justifying priority treatment of the various per diem charges. In reaching this conclusion, it found the exception created in 11 U.S.C. § 205(n), *i.e.* § 77(n), noteworthy:

> Appellees rely upon sections 77(c)(7) and 77(*l*) of the Bankruptcy Act, 11 U.S.C. §§ 205(c)(7) & (*l*), which together set forth the fundamental rule of railroad reorganization: the reorganization court establishes the rights and priorities of creditors presenting claims against the estate and determines when those claims shall be paid. It is conceded that the pre-reorganization charges involved here are "claims" within the meaning of section 77(b) of the Act. Such claims would, absent some special treatment, be paid according to the priorities established by the reorganization court. Finally, the pre-reorganization per diem claims do not qualify for any of the express special priorities created by the Act. *See, e.g.,* 11 U.S.C. §§ 205(j), 205(n).

*Id.* at 310 (footnotes omitted). Because Congress did not create a special priority for the

per diem charges, they were subject to the normal priority scheme otherwise provided in the Bankruptcy Act.

The same is true in this case. The prepetition claims of employees are accorded a specific but limited priority in § 507(a)(3). Had Congress intended employees who were covered by a collective bargaining agreement subject to the provisions of § 1167 to have broader rights, Congress could have so stated in § 1171. It is also worth noting that § 1167, § 1171 and § 507(a)(3) were all enacted together as part of a comprehensive revision of bankruptcy law. The broadening of pre-petition claimants entitled under § 1171 to administrative expense status was thus not developed in a vacuum, but during a time when the overall scheme of priorities would have been an issue. Based upon both the plain language of § 1167 and the legislative history of that section, we conclude that Congress did not extend the priority already given employees under § 507(a)(3) with the passage of § 1167.

## VI. Amount of the claim.

The only remaining issue is the amount of the claim, if any, to which TCU is entitled as an unsecured creditor. Two issues were raised as to the amount of the claim asserted. The first regarded the duplicative claims of Judith Thiel and Jean McCumber. TCU has not claimed that these claims should be paid twice, but has argued that the claim it has submitted would entitle these claimants to a higher priority for a greater amount of their claims. It concluded that its claim should govern the distribution to these employees. In light of our determination of the priority issues raised in the present claim, we conclude that the original claims of these creditors would have afforded them more favorable treatment. Accordingly, claim no. 105 is disallowed to the extent that it is duplicative of the previously filed claims of Judith Thiel and Jean McCumber.

The second issue raised as to the amount of the claim was that the Trustee could not reconcile the amounts with the Debtors' books and records. Under 11 U.S.C. § 502(a) a claim is "deemed allowed" unless an objection is filed, as was in this

case. Beyond this, FED.R.BANKR.P. 3001(f) states that "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Cases interpreting § 502 and FED.R.BANKR.P. 3001(f) have uniformly held that under these provisions, a party objecting to the claim must present affirmative evidence to overcome the presumptive validity of a properly filed proof of claim. Only after this has been done does the burden of persuasion shift to the creditor. *See Fullmer v. United States*, 962 F.2d 1463, 1466 (10th Cir.1992); *In re Allegheny International, Inc.*, 954 F.2d 167, 173–174 ((3rd Cir.1992); *In re All–American Auxiliary Assoc.*, 95 B.R. 540, 544–545 (Bankr. S.D.Ohio 1989). In this case the Trustee has consented to the court resolving this matter on the pleadings submitted but has presented no evidence that the claims submitted under TCU's aegis are either not valid or in the incorrect amount. In the absence of any such evidence the objection must be overruled in this aspect.

## VII. Order.

For the foregoing reasons,

IT IS ORDERED that claim no. 105 is disallowed to the extent that it claims priority treatment under 11 U.S.C. §§ 507(a)(1), (3) or (4);

IT IS FURTHER ORDERED that claim no. 105 is disallowed to the extent that it is duplicative of claims no. 66, 94, and 135;

IT IS FURTHER ORDERED that, except as otherwise provided in this order, claim no. 105 is allowed in its entirety as a general unsecured claim; and

IT IS FURTHER ORDERED that, notwithstanding the claims bar date set in this case, and subject to the conclusions of law set forth in this Opinion and Order, TCU may, within 30 days of the date of this order, file an amended claim in the same amount as claim no. 105 less the amounts previously allowed under claims no. 66, 94, and 135 setting forth with particularity the facts supporting any priority which TCU may assert

under 11 U.S.C. § 507(a)(3), which claim shall be deemed timely filed.